**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON**

**MARK GOMEZ,**

**Plaintiff,**

**v.** **Case No. 2:17-cv-04105**

**RICHARD F. NEELY,**
**MICHAEL O. CALLAGHAN,[1] and**
**CHRISTOPHER MACCORKLE SMITH,**

**Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss (ECF No. 5).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 3, 2017, the pro se plaintiff filed the instant Complaint against the defendants alleging violations of the civil provisions of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and various state law claims. All of the parties reside in Charleston, West Virginia, and all of the claims arise out of conduct that occurred in the course of prior litigation filed in this United States District Court and the Circuit Court of Kanawha County, West Virginia.

[1] The plaintiff's Complaint and other documents list Mr. Callaghan's middle initial as "G" when it is actually "O." The Clerk is directed to modify the docket sheet accordingly.

Christopher MacCorkle Smith ("Smith") is the plaintiff's brother-in-law, and the sole owner of A.C.R. Promotions, Inc. ("A.C.R."), a West Virginia for profit corporation that promotes boxing and mixed martial arts sports fighting events in various states. (ECF No. 1 at 15, ¶¶ 79-82). According to the Complaint, during the 2015 legislative session, the plaintiff became a registered lobbyist in order to represent A.C.R.'s interests before the State Athletic Commission ("the Commission") and other state entities. The plaintiff alleges that he served as a contractor, not an employee, of A.C.R., and that his contracted duties included retaining a lawyer to stop Commission officials from extorting money from A.C.R. (*Id.* at 15-16, ¶¶ 85-86).

On an unspecified date, the plaintiff and Smith met with and retained defendant Richard Neely ("Neely") and his law firm, Neely & Callaghan, to represent A.C.R. (*Id.* at 16, ¶ 87). According to the Complaint, "[y]our plaintiff witnessed A.C.R. and Neely & Callaghan Law Firm enter into a contingency fee arrangement where the law firm would be paid fifty (50%) percent plus any expenses the law firm incurred." (*Id.*, ¶ 90). The plaintiff further alleges that, based upon the engagement of Neely's firm, he and A.C.R. entered into a modified oral agreement by which "A.C.R. would pay Plaintiff one-third (1/3) of the company's gross recovery" from a lawsuit Neely was going to file against the Commission. (*Id.* at 16-17, ¶¶ 93-95).

On May 11, 2015, Neely filed a Complaint in *Smith v. Allred et al.*, No. 2:15-cv-06026 in this United States District Court alleging violations of the civil RICO Act grounded in acts of extortion by Commission officials. The plaintiff alleges that Neely's Complaint was formulated from the plaintiff's own legal work product. The civil RICO matter was ultimately settled out of court and a dismissal order was entered by the presiding District Judge on June 29, 2016. According to the instant Complaint, the

settlement amount was $550,000. (*Id.* at 17, ¶ 98). Consequently, the plaintiff asserts that, based upon his modified agreement with A.C.R., he was to receive $83,3333.33 (or 1/3 of proceeds A.C.R. received after the payment of attorney fees and expenses). (*Id.*, ¶ 97).

The plaintiff further alleges that, on January 27, 2015 (before the above-referenced lawsuit was filed), A.C.R. paid him $500 for "lobbying." (*Id.*, ¶ 100). However, he denies receiving any other payments. The plaintiff further claims that Neely and his law firm represented both Smith and A.C.R. in the civil RICO action against the Commission, but failed to separate A.C.R.'s claims from Smith's, and failed to show how Smith was separately harmed. (*Id.* at 17-18, ¶¶ 103-106).

The plaintiff further asserts that Neely paid all of the settlement proceeds from the civil RICO action directly to Smith and his wife, rather than to the corporation, and failed to pay the plaintiff for his lobbying services as agreed. (*Id.* at 18-19, ¶¶ 109, 116). Thus, on June 21, 2017, the plaintiff filed a lawsuit in the Circuit Court of Kanawha County against A.C.R. for breach of contract and unjust enrichment and demanded payment of $83,333.33 for unpaid lobbying fees. *See Gomez v A.C.R. Promotions, Inc.*, No. 17-C-858 (Kanawha Cnty Cir. Ct.) ("the state court action"). (*Id.* at 3, ¶ 11).

Smith was served with process in the state court action on June 27, 2017. (*Id.*, ¶ 13). On July 11, 2017, Neely, acting as counsel for A.C.R., filed a Motion to Dismiss in the state court action. (*Id.*, ¶ 14). The Motion to Dismiss contained certain statements that form the basis of the plaintiff's claims in the instant matter. According to the Complaint herein, the Motion to Dismiss stated in pertinent part:

> Plaintiff is a n'er-do-well [sic; ne'er-do-well], convicted felon and disbarred lawyer, who is the brother of A.R.C.'s [sic; A.C.R.'s] secretary, Andrea

> Smith. Plaintiff has lived for the past several years entirely from the largess of his father and other family members.

(ECF No. 1 at 3-4, ¶ 16). The plaintiff alleges that these comments were defamatory insults and constituted "fighting words." (*Id.* at 4-5, ¶¶ 19-20). He further alleges that Neely, without any knowledge of the plaintiff's personal life, wrote these defamatory statements at Smith's behest and, thus, engaged in a "wide-spread and comprehensive smear campaign against Mark Gomez to avoid paying their just debts." (*Id.* at 5, ¶¶ 35-37). The plaintiff further contends that Neely has "published and disseminated defamatory information" about him being a "convicted felon" to other persons and entities. (*Id.* at 5-6, ¶¶ 38-39).[2]

The plaintiff further alleges that, on July 14, 2017, he hand-delivered a letter to Neely's office requesting that he "rectify" what the plaintiff "perceived to be publications of insults and defamation to his character," but Neely failed to respond. (*Id.* at 6, ¶ 41). The plaintiff subsequently filed the instant Complaint on October 3, 2017. On October 30, 2017, the Honorable James C. Stucky, Kanawha County Circuit Judge, dismissed the state court action with prejudice, finding that the plaintiff's breach of contract and unjust enrichment claims were barred by the statute of frauds because the alleged contract was an oral agreement that could not be completed within one year. The Order dismissing the state court action is attached to the plaintiff's Response to the Motion to Dismiss. (ECF No. 10, Attach. 1 at 6).

---

[2] According to documents filed with the Motion to Dismiss herein, Mark Gomez pled guilty to a felony of theft by conversion in Georgia and voluntarily surrendered his Georgia law license in 2001. (ECF No. 5 at 6, Ex. 1). However, according to documents attached to the plaintiff's Response to the Motion to Dismiss, the Superior Court of Coweta County, Georgia, subsequently granted a Petition for Discharge of Defendant (First Offender Act) and entered an Order of Discharge expunging the plaintiff's felony conviction on September 7, 2006 (ECF No. 10, Attach. 6 at 1).

On October 13, 2017, the defendants filed a Motion to Dismiss in the instant action (ECF No. 5). The motion asserts that "any claim related to the failure to give Mr. Gomez proceeds from the settlement between A.C.R. Promotions and the State of West Virginia is precluded by collateral estoppel" based upon Judge Stucky's ruling in the state court action. (*Id.* at 1-2).

The defendants further contend that the plaintiff's civil RICO claim contains no plausible acts of racketeering on the part of the defendants and that "[t]he most that Plaintiff has pled are contract causes of action arising under the civil law of West Virginia." (*Id.* at 2-3). Specifically, the defendants contend that the plaintiff's allegations that the defendants engaged in obstruction of justice, mail fraud, and extortion do not meet the elements of those offenses. (*Id.* at 3). The defendants further assert that, because the plaintiff's sole ground for federal jurisdiction is his civil RICO claim, if that claim fails, his state law claims may be dismissed because they are before the court under "pendent jurisdiction." *See* 28 U.S.C. § 1367. (*Id.* at 2).

On November 15, 2017, the plaintiff filed a Response to the Defendants' Motion to Dismiss, with attached exhibits. (ECF No. 10). The Response disputes the application of collateral estoppel to any of his claims. The plaintiff also contends that his allegations of obstruction of justice meet the elements of the omnibus clause contained in 18 U.S.C. § 1503, and further asserts that his allegations also establish the elements of mail fraud under 18 U.S.C. § 1341, and extortion under West Virginia Code § 61-2-13. (*Id.* at 5-9, 13-14). The Response further contends that Neely's comments constitute defamation per se and are not protected by the absolute litigation privilege or any qualified privilege. (*Id.* at 9-13).

On November 16, 2017, the defendants filed a Reply (ECF No. 11), reiterating their argument that the plaintiff cannot state a plausible civil RICO claim. The Motion to Dismiss is ripe for adjudication and the undersigned will address these arguments as necessary in the Analysis section below.

**STANDARD OF REVIEW**

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * * In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A. The plaintiff cannot state a plausible civil RICO claim.

The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1962). The plaintiff must also allege an injury to his business or property that was proximately caused by such conduct. *Id.* "A 'pattern of racketeering activity' requires 'at least two acts of racketeering activity.'" 18 U.S.C. § 1961(5). The statutory definition of racketeering activity includes a wide range of criminal conduct, which for, the purpose of this action, includes obstruction of justice, mail fraud, and extortion.

In Count 10 of his Complaint, the plaintiff alleges that:

> Sometime in June or July of 2016, the exact date being unknown, [the defendants] did corruptly fail to distribute the proceeds of Federal civil RICO case 2:15-cv-06026 to West Virginia corporation A.C.R. Promotions, Inc. and instead distributed all or an inordinate amount of said proceeds to corporate officers by bypassing their corporate structure, creditors, and taxing authorities, said conduct affecting the due administration of justice, and interstate commerce, said activity being a violation of 18 U.S.C. § 1503, a predicate offense of the [RICO Act].

(ECF No. 1 at 22, ¶ 139). In Count 11, the plaintiff further alleges:

> On or about July 11, 2017, by a threatening communication in the form of a state court pleading, [the defendants] did endeavor to influence and impede Mark Gomez from pursuing said state court lawsuit for payment of services from a Federal Civil RICO case settlement (Smith v. Allred 2:15-[C]V-06026), with defamations, insults, and epithets, and the implied threat that the pleading would forever broadcast and publish its vitriol from the Kanawha County Circuit Clerk's records, said conduct affecting the due administration of justice, and interstate commerce, said activity being a violation of 18 U.S.C. § 1503, a predicate offense of the [RICO Act].

(*Id.*, ¶ 140).

The defendants contend that these counts do not demonstrate "obstruction of justice" under the cited federal statute because there is no mention of any attempt to "intimidate or corrupt any juror or court official," as required by 18 U.S.C. § 1503. (ECF No. 5 at 3). The defendants' motion further states:

> Counts 11 and 12 then, inappropriately, conflate "obstruction of justice" (Count 11) with "mail fraud" (Count 12). Plaintiff alleges that Richard Neely's statement in a court pleading that Plaintiff was a disbarred lawyer and convicted felon was designed to "chill the resolve" of Plaintiff to pursue payment from Defendants for past performed business services – something that does not amount to "obstruction of justice" under § 1503 because it does not involve a juror or court officer. Then the further fact that Defendant Neely put the aforesaid statement into the U.S. Mail somehow gives rise to a claim Defendant Neely committed mail fraud.

(*Id.* at 4).

Under 18 U.S.C. § 1341, "devis[ing] or intend[ing] to devise any scheme or artifice to defraud . . . [and] plac[ing] in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . ." constitutes mail fraud. 18 U.S.C. § 1341. The defendants' motion further asserts that "there is no plausible allegation that Defendant Neely devised a 'scheme or artifice to defraud,' but only that Neely devised a scheme or artifice to 'intimidate,' and that doesn't constitute 'mail fraud' under [18 U.S.C. § 1341]." (*Id.*)

The plaintiff's Response contends that his allegations satisfy the "omnibus clause" of 18 U.S.C. § 1503, which states in pertinent part:

> Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a). The plaintiff contends that this portion of the statute is broadly interpreted to criminalize any attempt to influence, obstruct, or impede the

administration of justice (in essence, any judicial action). The plaintiff's Response further states:

> Your Plaintiff has alleged violations of 18 U.S.C. § 1503, Obstruction of Justice, not against A.C.R., but against the current Defendants that have used the corporation as a shell vehicle to sue the State of West Virginia. This criminal statute normally may only be used by federal prosecutors and not civil litigants. However, in order to satisfy the predicate act requirement of the RICO Act (18 U.S.C. § 1961 et seq), plaintiffs may use the Omnibus Clause of 18 U.S.C. § 1503 in order to show a pattern of criminal misconduct to support a civil action against wrongdoers.
>
> * * *
>
> 18 U.S.C. § 1503 is a criminal statute. It is to protect the integrity of American Courts, both state and federal for hindering the efficient process of the Courts and free from obstruction. "[T]he purpose of 18 U.S.C. § 1503 is to protect not only the procedures of the criminal system but also the very goal of that system – to achieve justice."
>
> * * *
>
> 18 U.S.C. § 1503 is totally separate and apart from Rule 11 sanctions that any complaining party may level against opposing litigants. Normally, an individual plaintiff would not be allowed to bring an 18 U.S.C. § 1503 charge in federal court, as the statute is criminal in nature rather than a civil remedy. As discussed above, the notable exception is when a Plaintiff is asserting a civil action based on the RICO Act.

(ECF No. 10 at 5-7).

Notably, the plaintiff cites no cases where the omnibus clause of section 1503 was used by a civil RICO plaintiff challenging matters set forth in a civil court pleading or conduct during a civil judicial proceeding. Rather, all of the authority cited in the attachments to the plaintiff's Response concerned attempts to tamper with or thwart some aspect of criminal proceedings. (ECF No. 10, Attach. 2 and 3). The defendants' Reply addresses this fact as follows:

> Similarly, Count 10 denominated "Obstruction of Justice" hardly shows an obstruction of justice as defined in 18 U.S.C. § 1503. There is no mention of any attempt to intimidate or corrupt any juror or court official

> [footnote omitted]. Similarly, Count 11, also an "obstruction of justice count," accuses Defendants of attempting to impede Plaintiff in the pursuit of his civil remedy, but nowhere is it averred that Defendants did anything to intimidate or harass a juror or court officer or did anything else that would impede the Plaintiff other than to defend themselves against an unjustified claim under a non-existent verbal contract.
>
> Plaintiff cites lots of law to show that the courts have interpreted the obstruction of justice statute quite broadly, but Plaintiff does not then go on to plead specific plausible facts showing that Defendants then did any act that, even under the broadest interpretations of the obstruction statute, could possibly have qualified as obstruction of justice.

(ECF No. 11 at 2-3) (emphasis in original).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations against the defendants do not constitute obstruction of justice as defined in 18 U.S.C. § 1503 and, thus, the plaintiff has not reasonably alleged predicate acts sufficient to support a plausible civil RICO violation under that statute.

Similarly, as noted above, the defendants assert that the fact that Neely's placement of a copy of the motion to dismiss the state court action (which contained the allegedly defamatory statements) in the United States Mail cannot support a predicate act of mail fraud under 18 U.S.C. § 1341. The plaintiff's Response, however, points to his allegations in paragraph 141, and addresses this claim as follows:

> On or about June 8, 2016, [the defendants] did devise a scheme and artifice to defraud **(Element 1)** Mark Gomez of his honest services and lobbying fees **(Element 3)**, by making a pleading with false, defamatory and insulting information **(Element 2)** designed to intimidate and "chill the resolve" of Mark Gomez **(Element 1)** from pursuing payment for past performed business services to A.C.R. **(Element 1)**, and then sent said intimidating document through the United States Postal Service mail **(Element 4)** in violation of 18 U.S.C. § 1341, a predicate offense of the [RICO Act] (See July 10, 2017, post-stamped envelope from Neely & Callaghan Law Firm marked as "Exhibit 8" and made a part of this Complaint.)

(ECF No. 10 at 8). Thus, the plaintiff contends that he has satisfactorily pled facts to support all of the required elements of mail fraud.

The defendants' Reply aptly notes:

> Plaintiff attempts to assert that a pleading in a civil case, because it is sent through the mails or wires, can constitute an act of mail fraud because it is intended to be a scheme or artifice to defraud. Arguably, then, every civil litigant would potentially be subject to civil RICO suits simply by disagreeing with the other litigant through the filing of a paper directed to the court through the mails. That result is absurd."

(*Id.*)

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations do not constitute mail fraud as defined in 18 U.S.C. § 1341 and, thus, the plaintiff has not reasonably alleged a predicate act sufficient to support a plausible civil RICO violation under that statute.

The plaintiff further contends that the defendants "did not take issue or objection with Plaintiff's Count 13 pertaining to West Virginia's felony extortion statute and Count 13 should be considered well pled and considered a RICO predicate activity." (ECF No. 10 at 9). The undersigned disagrees. West Virginia Code § 61-2-13 provides in pertinent part:

> If any person threaten injury to the character, person or property of another person . . . and thereby extort money, pecuniary benefit, or any bond, note, or other evidence of debt, he shall be guilty of a felony . . . .

W. Va. Code § 61-2-13. Even liberally construing the plaintiff's Complaint to be alleging that defendant Neely's comments in the motion to dismiss the state court action were a threat to injure the plaintiff's character, such conduct is simply not a plausible attempt to "extort money or a pecuniary benefit."

Accordingly, the undersigned proposes that the that the presiding District Judge **FIND** that the plaintiff's conclusory allegations do not constitute conduct sufficient to support a violation of W. Va. Code § 61-2-13 for extortion and, thus, the plaintiff has not reasonably alleged a predicate act sufficient to support a plausible civil RICO violation under that statute. Moreover, even if the district court finds that the Complaint does plausibly plead this crime as a predicate act, the plaintiff has not demonstrated two predicate acts as required to state a civil RICO claim.

For all of these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not stated a plausible civil RICO claim and, thus, his Complaint fails to state a valid basis for subject matter jurisdiction in this federal court.[3]

### B. The District Court should decline supplemental jurisdiction over the plaintiff's state law claims.

The plaintiff's Complaint also contains a number of claims grounded in state law. Specifically, the plaintiff alleges claims of abuse of process (Count 1), insulting words (Counts 2 and 3), defamation by slander per se (Count 4), defamation per se (libel-negligence) (Count 5), defamation per se (Count 6), intentional infliction of emotional distress/tort of outrage (Count 7), conversion of intellectual property and unjust enrichment (Count 8), and negligent supervision (Count 9).

In light of the recommended dismissal of the plaintiff's only federal claim, this federal court should decline to retain supplemental jurisdiction over the plaintiff's state law claims. Pursuant to 28 U.S.C. § 1367, a district court has discretion to retain or

---

[3] Because the plaintiff's Complaint fails to state a plausible civil RICO claim, the undersigned need not address the defendants' argument concerning collateral estoppel.

dismiss state law claims when the federal basis for action drops away. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Section 1367(c)(3) provides as follows:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. 1367(c)(3). There being no valid federal issues for the court's consideration, the court should decline to exercise supplemental jurisdiction over the state law claims.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 5) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, mail a copy of the same to the plaintiff and transmit a copy to counsel of record.

July 31, 2018

Dwane L. Tinsley
United States Magistrate Judge